José De Jesus Rivera (SBN 004604)
jrivera@hmpmlaw.com

Stephen T. Portell (SBN 18567)
sportell@hmpmlaw.com

**HARALSON, MILLER, PITT, FELDMAN
  & McANALLY, P.L.C.**
2800 North Central Avenue, Suite 840
Phoenix, AZ  85004-1069
(602) 266-5557 • (602) 266-2223 Fax

Attorneys for Hon. Anna Baca

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph M. Arpaio, in his official capacity as Maricopa County Sheriff, and Andrew P. Thomas, in his official capacity as Maricopa County Attorney,<br><br>        Plaintiffs,<br><br>v.<br><br>Maricopa County Board of Supervisors, a body politic and corporate; Fulton Brock, Supervisor, Maricopa County Board of Supervisors; Andrew Kunasek, Supervisor, Maricopa County Board of Supervisors; Donald T. Stapley, Jr. Supervisor, Maricopa County Board of Supervisors; Mary Rose Wilcox, Supervisor, Maricopa County Board of Supervisors; Max Wilson, Supervisor, Maricopa County Board of Supervisors; David Smith, County Manager; Sandi Wilson, Deputy County Manager; Wade Swanson, Office of General Litigation; Barbara R. Mundell, Judge of the Superior Court of Arizona, Anna Baca, Judge of the Superior Court of Arizona, Gary Donahoe, Judge of the Superior Court of Arizona, Kenneth Fields, Judge of the Superior Court of Arizona, in their official capacities; Thomas Irvine, attorney; Edward Novak, attorney; and Polsinelli Shughart P.C.,<br><br>        Defendants. | NO.  2:09-cv-02492-GMS<br><br><br>**HONORABLE ANNA BACA'S<br>MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

1   Pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6),

2   Defendant Hon. Anna Baca ("Judge Baca") moves to dismiss the Complaint filed by

3   Plaintiffs Joseph M. Arpaio, in his official capacity as Maricopa County Sheriff, and

4   Andrew P. Thomas, in his official capacity as Maricopa County Attorney.  Judge Baca

5   joins <u>The Polsinelli Defendants' Motion to Dismiss</u> filed on December 15, 2009

6   ("Polsinelli Motion"), as well as the motions to dismiss that will be filed by counsel for

7   the other defendants in this matter. In addition, Judge Baca provides the following

8   grounds for dismissal.

9   **MEMORANDUM OF POINTS AND AUTHORITIES**

10  **I.**   **<u>Introduction</u>**

11  The scorched-earth political battles of Andrew Thomas and Joseph Arpaio have

12  no place in this court.  In an act of recklessness and desperation, they have named four

13  highly respected Arizona judges as racketeers pursuant to 18 U.S.C. § 1961, *et seq.*

14  ("RICO").   Although the allegations against these judges are demonstrably false,

15  protracted litigation is unwarranted.   Arpaio and Thomas should not be allowed to

16  maintain the present lawsuit and run roughshod over: (1) the well-settled doctrine of

17  judicial immunity, (2) federal pleading standards, and (3) RICO itself.  For the reasons

18  stated below, the claims against Judge Baca and the other judges should be dismissed

19  with prejudice.

20  **II.**   **<u>Allegations Against Judge Baca</u>**

21  Judge Baca, now retired from public service, is peripheral to Plaintiffs' lawsuit.

22  Allegations against her are limited to paragraphs 20, 33 and 38-42 of the Complaint.

23  The allegations relate to a brief period of time, beginning in December 2008, when

24  Judge Baca, as Presiding Criminal Judge in Maricopa County Superior Court, dealt with

25  the assignment of Judge Fields to the prosecution of Donald Stapley and a subsequent

26  motion from Andrew Thomas to disqualify Judge Fields, pursuant to Ariz. R. Crim. P.

10.1.[1]  Judge Baca's involvement ended approximately four months later, when Andrew Thomas filed a Notice of Substitution of Counsel to have the Yavapai County Attorney take over the prosecution.[2]

The Complaint alleges that Judge Baca knew of Judge Fields' bias against Andrew Thomas, and, despite this knowledge, she "conspired to retain Fields" on the *Stapley* case and "refused to grant [Thomas] a hearing on the State's motion to remove Fields for bias." Complaint, ¶¶ 38, 41 & 42.  Plaintiffs claim that this was done as part of a conspiracy to "facilitate the payment of public monies by the Board of the Superior Court to fund the Court Tower … in exchange for the hindering and providing prosecution [sic] from criminal investigation and prosecution" for Donald Stapley and unnamed "others".  Complaint, ¶33.

## III.   ANALYSIS

### A.   Judicial Immunity Shields Judge Baca from Plaintiffs' RICO Claim.

The United States Supreme Court has long recognized the doctrine of judicial immunity and its venerable history in English courts.  *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872).  Judicial immunity protects judicial independence "by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Id*., at 348. To promote judicial independence, the scope of the immunity will be broadly construed

---

[1] Although it is irrelevant to deciding the present motion, the Court can take judicial notice of the minute entries in Maricopa County Superior Court Docket No. CR2008-009242 (hereinafter "the *Stapley* case") to understand the limited timeframe and role of Judge Baca.  Taking judicial notice of such public documents does not convert the present motion into a motion for summary judgment. *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (district court's consideration of state's public records did not convert defendant's 12(b)(6) motion to one for summary judgment); *Shaw v. Hahn*, 56 F.3d 1128, 1129, n.1 (9th Cir. 1995) (a district court can look beyond the plaintiff's complaint to matters of public record when deciding a Rule 12(b)(6) motion).

[2] Again, although it is irrelevant to the instant motion, the Court can take judicial notice of the minute entry in the *Stapley* case, dated April 7, 2009.

1    and technical distinctions avoided.    *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir.

2    1986) (citations omitted).  Judicial immunity applies even when a judge is accused of

3    acting maliciously or corruptly, because it "is not for the protection or benefit of a

4    malicious or corrupt judge, but for the benefit of the public, whose interest it is that the

5    judges should be at liberty to exercise their functions with independence and without

6    fear of the consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (quoting *Scott v.*

7    *Stansfield*, L.R. 3 Ex. 220, 223 (1868)).

8         A judge loses her absolute immunity in only two scenarios: (1) if her actions were

9    performed in the "clear absence of all jurisdiction" or (2) if her actions were not

10   "judicial" in nature.  *Bradley*, 80 U.S. at 351; *Stump v. Sparkman*, 435 U.S. 349, 360

11   (1978).  Under the first scenario, a "clear absence of all jurisdiction" means a lack of

12   subject matter jurisdiction.  *Ashelman*, 793 F.2d at 1076 (immunity is lost only if a judge

13   was acting clearly beyond the scope of subject matter jurisdiction).  The scope of a

14   judge's jurisdiction should be construed broadly to effectuate the policies supporting

15   immunity.  *Id.*

16        Under the second scenario, only "judicial" acts receive absolute immunity—

17   administrative tasks (ex. hiring or firing court personnel) or legislative duties (ex.

18   promulgating rules) fall outside the scope of absolute immunity.  *Forrester v. White,* 484

19   U.S. 219, 227, 108 S. Ct. 538, 544 (1988).  "Judicial" acts have been described as

20   functions "normally performed by a judge, and to the expectations of the parties, i.e.,

21   whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

22   "Judicial" acts usually involve the "function of resolving disputes between parties, or of

23   authoritatively adjudicating private rights." *Atkinson-Baker & Associates, Inc. v. Kolts*,

24   7 F.3d 1452, 1454 (9th Cir. 1993) (quoting *Antoine v. Byers & Anderson, Inc.*, 113 S. Ct.

25   2167, 2171 (1993)).

26

1

2

**1.   Judge Baca Acted within the Subject-Matter Jurisdiction of the Maricopa County Superior Court.**

3      Judges of the Superior Court are granted broad jurisdiction under Arizona law and

4  the state constitution.  The Superior Court of Arizona is a single unified trial court of

5  general jurisdiction and has original jurisdiction over felony cases.  *State v. Marks*, 186

6  Ariz. 139, 142, 920 P.2d 19, 22 (App. Div. 1 1996) rev. den.; Ariz. Const. Art. 6 § 14(4).

7  As such, the Maricopa County Superior Court had not only original jurisdiction over the

8  *Stapley* case, it also had "all powers and [could] issue all writs necessary to the complete

9  exercise of its jurisdiction." A.R.S. § 12-123(B).  Again, jurisdiction is to be construed

10  broadly to effectuate the policies supporting immunity.  *Ashelman*, 793 F.2d at 1076.

11      There can be no dispute that Judge Baca, as the Presiding Criminal Judge of the

12  Maricopa County Superior Court, was well within the subject matter jurisdiction of the

13  court when she presided over the Plaintiffs' motion to disqualify Judge Fields.  In fact,

14  Judge Baca had considerable latitude in handling the motion.  "[A]ny provision relating

15  to disqualification of judges must be given strict construction to safeguard the judiciary

16  from frivolous attacks on its dignity and integrity and to ensure orderly function of the

17  judicial system."  *State v. Perkins*, 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984),

18  citing *Rademacher v. City of Phoenix*, 442 F. Supp. 27, 29 (D. Ariz. 1977).  In addition,

19  a presiding judge is not strictly required to hold a hearing on a motion to disqualify.

20  *State v. Eastlack*, 180 Ariz. 243, 254, 883 P.2d 999, 1010 (1994) (holding that a

21  presiding judge does not need to hold a hearing pursuant to Ariz. R. Crim. P. 10.1, if she

22  determines that the motion fails to allege interest or prejudice on the part of the assigned

23  judge).  And, finally, while Arizona judges are encouraged to resolve disqualifications

24  motions "as quickly as justice allows," any delays in the proceedings are within the

25  sound discretion of the court.  *State v. Myers*, 117 Ariz. 79, 87, 570 P.2d 1252, 1260

26  (1977).

1    Therefore, judicial immunity cannot be defeated on the grounds that Judge Baca's

2    actions were beyond the subject matter jurisdiction of her court.  In fact, her actions were

3    well within the discretion granted to her under Arizona law.  Plaintiffs' allegations that

4    Judge Baca and the other defendant judges violated Arizona law or procedural rules are

5    irrelevant (and patently false).  Judicial immunity applies "however erroneous the act

6    may have been and however injurious its consequences may have proved to the

7    plaintiff."  *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) (quoting *Bradley*, 80

8    U.S. at 347); *Evans v. Copins*, 26 Ariz. App. 96, 546 P.2d 365 (1976) (judge shielded by

9    absolute immunity despite his wrongful incarceration of a citizen for a traffic violation).

10   "If judicial immunity means anything, it means that a judge will not be deprived of

11   immunity because the action he took was in error … or was in excess of his authority."

12   *Stump*, 435 U.S. at 356, 98 S. Ct. at 1105 (internal quotations omitted).

13                    **2.    Judge Baca's Activities were Judicial in Nature.**

14        Because Judge Baca acted within her jurisdiction, the only question that remains

15   is whether her actions were "judicial" in nature.  When making this determination, courts

16   must look to the overall "function" or "nature" of the act, not the actor or the act itself.

17   *Forrester,* 484 U.S. at 227, 108 S. Ct. at 544 ("immunity is justified and defined by the

18   *functions* it protects and serves, not by the person to whom it attaches") (emphasis in

19   original).  We must first look to the act's relationship to "a general function normally

20   performed by a judge." *Mireles v. Waco*, 502 U.S. 9, 12-13, 112 S. Ct. 286, 288-289

21   (1991).  It is also helpful to assess whether the parties dealt with the judge in her judicial

22   capacity. *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir. 1997).

23        In *Mireles*, the Supreme Court held that a judge was judicially immune from suit

24   for ordering police officers to bring an attorney before him, even though the judge

25   allegedly directed them to carry out the order with excessive force. *Mireles*, 502 U.S. at

26   13, 112 S. Ct. at 289.   The court noted that, although directing the officers to use

1   excessive force was not a "function normally performed by a judge," the particular act is

2   not the focus of the analysis. *Id.* at 12-13, 112 S. Ct. at 288. "[I]f only the particular act

3   in question were scrutinized, then any mistake a judge made that exceeded his authority

4   would become a 'nonjudicial' act, because an improper or erroneous act cannot be said

5   to be normally performed by a judge." *Id.* In the end, the Supreme Court held that the

6   "function of directing police officers to bring counsel in a pending case before the court"

7   was a judicial act and deserved absolute immunity. *Id.* at 13, 112 S. Ct. at 288-289.

8       In contrast to the unusual order of the trial judge in *Mireles*, Judge Baca's

9   activities were clearly judicial in nature. One needs look no further than the Complaint

10   itself. Plaintiffs' dispute with Judge Baca arose directly from her handling of the *Stapley*

11   case in her official capacity as the Presiding Criminal Judge. Complaint, ¶¶ 20, 33 & 38-

12   42. Plaintiffs criticize her for allegedly refusing to grant a hearing in the *Stapley* case

13   and to rule that Judge Fields was disqualified due to his bias. These alleged actions of

14   Judge Baca are undeniably "judicial" in their nature and are, therefore, subject to

15   absolute immunity. "The application of **judicial immunity is simple and non-**

16   **controversial when applied to 'paradigmatic judicial acts,'** or acts of actual

17   adjudication, i.e., acts involved in resolving disputes between parties who have invoked

18   the jurisdiction of the court." *Barrett,* 130 F.3d at 255, citing *Forrester*, 484 U.S. at 227,

19   108 S. Ct. at 544 (emphasis added). Even if Judge Baca had originally assigned Judge

20   Fields to the *Stapley* case, the act of assigning the case would have been a judicial one

21   that is shielded by absolute immunity. *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir.

22   1985) (holding that assignment of the case, even if improper, is a judicial act for which a

23   judge is entitled to immunity); *John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990)

24   (agreeing with *Ashelman* and stating "unlike a judge who fires a court employee, a judge

25   who assigns a case, considers pretrial matters, and renders a decision, acts well within

26   his or her judicial capacity").

1

2

**3.  Plaintiffs' Vague Allegations of a Conspiracy Cannot Overcome
      Judicial Immunity.**

3      Plaintiffs' allegation that Judge Baca and the other defendant judges were

4   motivated by a conspiracy to hinder the prosecution of Donald Stapley cannot defeat

5   judicial immunity.  It is not uncommon for disgruntled litigants to allege conspiracies,

6   bribery and corruption to attack judges.  *See, e.g. Stone v. Baum*, 409 F. Supp. 2d 1164

7   (D. Ariz. 2005).  Once immunity is established for the conduct in question, it "is not

8   overcome by allegations of bad faith or malice." *Barrett,* 130 F.3d at 255 (quoting

9   *Mireles*, 502 U.S. at 11); *Forrester,* 484 U.S. at 227, 108 S. Ct. at 544 (a judicial act

10  "does not become less judicial by virtue of an allegation of malice or corruption of

11  motive"); *Pierson*, 386 U.S. at 554-555 (finding immunity despite the allegation of a

12  conspiracy between the judge and law enforcement officers to arrest other Freedom

13  Riders).

14      For example, in *Ashelman*, a prisoner awaiting trial filed a civil rights action

15  against the judge and prosecutor for an alleged conspiracy to deprive him of access to

16  resources for the defense of his case. 793 F.2d at 1074.  The Ninth Circuit upheld

17  dismissal of the complaint and overruled contrary cases.[3]  793 F.2d at 1078.  The court

18  in *Ashelman* held that a plaintiff's allegation of a conspiracy cannot pierce judicial

19  immunity, even when the allegations describe a conspiracy to produce a certain outcome

20  in court.  *Id*.  The Ninth Circuit held that conspiracy allegations "should no more pierce

21  the actor's immunity than allegations of bad faith, personal interest or outright

22

23          [3] *Rankin v. Howard*, 633 F.2d 844, 848-49 (9th Cir. 1980) (an alleged conspiracy
     with a Kansas judge, who had no personal jurisdiction over the plaintiff but issued *ex*
24   *parte* orders anyway to establish a guardianship over the plaintiff to allow his parents to
     "deprogram" him from his beliefs in the Unification Church); *Beard v. Udall*, 648 F.2d
25   1264 (9th Cir. 1981) (an alleged conspiracy between a judge and a prosecutor to deprive
     a defendant of his constitutional rights).

26

1   malevolence." *Id.*

2       A more extreme example is found in *Martinez*, where there was definitive proof

3   that a judge had an *ex parte* meeting with prosecutors and law enforcement officials.

4   771 F.2d at 432-433.  During the meeting, the judge suggested installing hidden cameras

5   to capture the plaintiff's suspected intimidation of jurors in a criminal trial and even

6   worked with the prosecutor on the timing of a mistrial motion so that defense strategies

7   would be revealed.  *Id.*  The Tenth Circuit upheld dismissal of the civil rights complaint

8   against the judge and observed that "[a] judge who allegedly predetermines a case is still

9   protected by judicial immunity." *Id.* at 435.  The court acknowledged that the *ex parte*

10  meetings were a "gross impropriety" but held that the judge had absolute immunity to

11  plaintiff's claim for damages and that the overriding concern should be the potential

12  harassment of courts from disappointed litigants.  *Id.* at 436.  The Tenth Circuit noted

13  that the public has other remedies to address judicial misconduct, including

14  impeachment and disciplinary proceedings.  *Id.*

15      In the present case, the allegations fall far short of those in *Ashelman* and

16  *Martinez*.  Plaintiffs allege that Judge Baca was aware of Judge Fields' bias and that she

17  conspired to "retain" him on the *Stapley* case.  Judge Baca did no such thing.  However,

18  even if such an allegation enjoyed a presumption of truth, it would not be enough to

19  defeat judicial immunity.  The scope of immunity is to be broadly construed and

20  exceptions should be narrow and technical distinctions avoided.  *Ashelman*, 793 F.2d at

21  1078.  "To foreclose immunity upon allegations that judicial and prosecutorial decisions

22  were conditioned upon a conspiracy or bribery serves to defeat these policies." *Id.*

23      **4.   Absolute Immunity Makes Amendment of the Complaint Futile.**

24      Issues of immunity should be resolved as early as possible in a lawsuit "in order

25  to prevent the litigant from having to endure pretrial matters such as discovery." *Barrett,*

26  130 F.3d at 252 (citations omitted).  "'Absolute immunity' refers to the right to be free

1  not only from the consequences of the litigation's results, but from the burden of

2  defending oneself altogether." *Stone*, 409 F. Supp. 2d at 1174, citing <u>46 Am. Jur. 2d,</u>

3  <u>Judges § 68 (August 2005)</u>.

4       Leave to amend pleadings is not proper when any of the following four factors are

5  present: bad faith, undue delay, prejudice to the opposing party, and/or futility.  *Stone*,

6  409 F. Supp. 2d at 1175, citing *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880

7  (9th Cir. 1999) (internal citations omitted).   In *Stone*, Judge David C. Bury held that

8  amending the complaint was futile because judicial immunity had been found:

9             The Complaint fails against all the named judges in this
              action because there is no question that subject matter
10            jurisdiction existed in each instance. The alleged acts were
              judicial acts, taken within each court's subject matter
11            jurisdiction, and as such the Defendant judges are immune
              from suit.

12

13  *Stone*, 409 F. Supp. 2d at 1176, citing *Ashelman*, 793 F.2d at 1075.

14  The Court should follow the example of *Stone* and dismiss Judge Baca and the other

15  defendant judges from this lawsuit.

16       **B.     No Plausible Facts are Alleged Against Judge Baca.**

17       Even if it could survive its obvious conflict with the doctrine of judicial

18  immunity, the Complaint fails to state a claim against Judge Baca.  In its 81 paragraphs,

19  only a few mention Judge Baca, and even those few paragraphs contain nothing more

20  than vague and conclusory allegations.  These defects would have been problematic for

21  Plaintiffs under the old, deferential pleading standards in federal court.  However, for the

22  reasons stated below, the defects are now fatal.

23       As the Court already knows, federal pleading standards have undergone a sea

24  change.  When the sufficiency of a pleading is challenged now, it is subjected to closer

25  scrutiny, and the presumption of truth is no longer automatic.  Now, a pleading must

26  contain factual allegations sufficient to "raise a right of relief above the speculative

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Also, courts will not accept as true any unsupported conclusions and unwarranted inferences, couched as factual allegations.   *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) (stating that pleadings which contain "no more than conclusions, [without any factual support], are not entitled to the assumption of truth").   In order to be "facially plausible" the facts, as pled, must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (Quoting *Twombly*, 550 U.S. at 556).

This new approach under *Twombly/Iqbal* is a two-step process. *Id.* First, the Court must examine the Complaint and "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* This step calls for the Court to weed out and disregard conclusory statements.

Second, the Court must look at what remains (the well-pleaded factual allegations) and "determine whether they plausibly give rise to an entitlement to relief." *Id.* This step is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When subjected to this two-step, the Complaints' allegations against Judge Baca crumble.   First, the Court must set aside all vague and conclusory statements in the Complaint, including, but not limited to, the following:

- **Paragraph 33** – all allegations;

- **Paragraph 38** – allegations about Judge Fields' bias;

- **Paragraph 39** – the sentence "[t]he evidence of defendant Fields' bias was extensive", and the phrase "had taken other public actions to demonstrate bias, in addition to taking other private actions evidencing bias known to defendants Mundell and Baca but currently unknown to plaintiffs."

- **Paragraph 41** – the phrase "in violation of Arizona law, rules of court and the standard practices of the Maricopa County Superior Court."

- **Paragraph 42** – the phrase "[t]his action violated Arizona's rules of court, which require a prompt hearing upon the filing of such a motion."

Second, the Court must examine the remaining allegations and decide whether they plausibly state a claim against Judge Baca. Under this analysis, the Court should consider the context of the allegations and filter them through the Court's considerable judicial experience and common sense. For example, Paragraph 33, if not disregarded as conclusory, alleges a wide-ranging conspiracy between the Board of Supervisors, members of the judiciary and a private law firm to steer public funds to a public construction project and to hinder the criminal prosecution of Donald Stapley and unnamed others. In its current form, Paragraph 33 is very similar to the "implausible" conspiracy allegations in *Iqbal*. 129 S. Ct. at 1951-1952 (government conspiracy to target and detain Arab Muslim men based upon their race, religion or national origin). In the present lawsuit, it is unreasonable to infer a wide-ranging conspiracy involving bribery of numerous public officials and state court judges. It is infinitely more plausible that the named defendants, including Judge Baca, were performing their various official duties and, in those capacities, had legitimate disagreements with the Plaintiffs. Under this "plausibility" analysis, the Court will find most, if not all, of the allegations in the Complaint describe political disputes, not racketeering.

For the Court's convenience, this motion is accompanied by a table that sets forth the paragraphs pertaining to Judge Baca and includes a model of the *Twombly/Iqbal* analysis for each one. *See* Appendix A.

**C.    Defects in Plaintiffs' RICO Claim.**

Judge Baca joins in and adopts by reference the authority and analysis in the Polsinelli Motion, including, but not limited to, the following:

- No predicate acts of bribery or extortion have been pled to satisfy Arizona's definition of those crimes;

- Plaintiffs lack standing;

- Plaintiffs have failed to plead a valid Civil RICO claim under 18 U.S.C. § 1962(b), (c) or (d);

- Plaintiffs have failed to identify the alleged RICO "enterprise"; and

- Dismissal with prejudice is required. *See, e.g., Swartz v. KPMG, LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming district court's dismissal of plaintiff's RICO claim with prejudice because "under any internally consistent set of facts, it would be futile to amend the RICO claim"); *Diessner v. Mortgage Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009) (dismissing plaintiff's RESPA claim where amendment would be futile).

**IV.    CONCLUSION.**

Plaintiffs, frustrated by their previous defeats in state and federal courts, now accuse respected judges of accepting bribes and hindering justice. Arpaio and Thomas designed their Complaint to create a public relations firestorm for the Maricopa County Superior Court, to humiliate judges who have dared to rule against them and to intimidate judges who may deal with them in the future. It is nothing less than an attack on the independence of Arizona's judiciary.

1    In words that are eerily prescient of this crisis, the Arizona Supreme Court has

2  explained the need for judicial immunity:

3

4          There are weighty reasons why judicial officers should be
           shielded in the proper discharge of their official duties from
           harassing litigation at the suit of those who think themselves
5          wronged by their decisions and that injustice has been done.
           **A defeated party to a litigation may not only think**
6          **himself wronged, but may attribute wrong motives to the**
           **judge whom he holds responsible for his defeat.** He may
7          think that the judge has allowed passion or prejudice to
           control his decision. To allow a judge to be sued in a civil
8          action on a complaint charging the judge's acts were the
           result of partiality, or malice, or corruption, would deprive
9          the judges of the protection which is regarded as essential to
           judicial independence. It is not in the public interests that
10         such a suit should be maintained; and it is a fundamental
           principle of English and American jurisdiction that such an
11         action cannot be maintained.

12  *Davis v. Burris*, 51 Ariz. 220, 225, 75 P.2d 689, 691 (1938) (emphasis supplied)

13  (quotation and internal citations omitted).

14    In light of the reckless accusations of Arpaio and Thomas, the need for judicial

15  immunity is now greater than ever. For the reasons outlined in this motion, dismissal of

16  the Complaint with prejudice is warranted under the doctrine of judicial immunity and

17  the standards of *Twombly/Iqball*. It will be the first step toward repairing the damage

18  done by Plaintiffs.

19    RESPECTFULLY SUBMITTED this 24th day of December 2009.

20                              **HARALSON, MILLER, PITT, FELDMAN**
                                **& McANALLY, P.L.C.**
21

22
                                By:    s/ Stephen T. Portell
23                                     Stephen T. Portell
                                       Jose De Jesus Rivera
24                                     Attorneys for Plaintiffs

25

26

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on December 24, 2009, I electronically transmitted the

3

attached document to the Clerk's Office using the CM/ECF System for filing and

4

transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5

Lisa M. Aubuchon
Deputy County Attorney
100 West Washington, Suite 2100
Phoenix, Arizona 85003
aubuchon@mcao.maricopa.gov
*Attorney for Plaintiffs*

6

7

8

Stephen W. Tully
John L. Condrey
GORDON & REES, LLP
111 West Monroe Street, Suite 1111
Phoenix, AZ 85003
stully@gordonrees.com
jcondrey@gordonrees.com
*Counsel for Defendants Maricopa
County Board of Supervisors; Fulton
Brock, Andrew Kunasek, Donald T.
Stapley, Jr., Mary Rose Wilcox, Max
Wilson, Supervisors; David Smith,
County Manager; Sandi Wilson, Deputy
County Manager; and, Wade Swanson,
Office of General Litigation*

9

10

11

12

13

14

15

16

Michael L. Parrish
STINSON, MORRISON, HECKER, LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004
mparrish@stinson.com
*Counsel for Defendant the Honorable
Barbara R. Mundell*

17

18

19

20

Gary L. Birnbaum
MARISCAL, WEEKS, McINTYRE &
FRIEDLANDER, P.A.
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012
gary.birnbaum@mwmf.com
*Counsel for Defendant the Honorable
Gary Donahoe*

James Belanger
COPPERSMITH    SCHERMER    &
BROCKELMAN, PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
jbelanger@csblaw.com
*Counsel for the Honorable Kenneth
Fields*

Don P. Martin
James A. Ryan
Nicole France Stanton
QUARLES & BRADY, LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
dmartin@quarles.com
james.ryan@quarles.com
Nicole.stanton@quarles.com
*Counsel for Defendants Polsinelli
Shughart, P.C., Thomas Irvine, and
Edward Novak*

21

s/ Arna Salazar

22

23

24

25

26