1  ANDREW P. THOMAS
2  MARICOPA COUNTY ATTORNEY

3  Rachel Alexander (Bar ID NO. 020092)
   Deputy County Attorney
4  301 West Jefferson , Suite 800
5  Phoenix, AZ 85003
   Telephone: (602) 506-3411
6  Firm ID No. 00032000
   Email:  alexandr@mcao.maricopa.gov
7  Attorneys for Plaintiffs

8

9              IN THE UNITED STATES DISTRICT COURT

10

11                    DISTRICT OF ARIZONA

12

13  Joseph M. Arpaio, in his official capacity
    as Maricopa County Sheriff, and Andrew         Case No. CV-02492-GMS
14  P. Thomas, in his official capacity as
    Maricopa County Attorney,                      FIRST AMENDED COMPLAINT
15
                                                   VIOLATIONS OF THE RACKETEER
16          Plaintiffs,                            INFLUENCED AND CORRUPT
                                                   ORGANIZATIONS ACT (18.U.S.C. §§1961,
17  v.                                             et seq.)

18

19  Maricopa County Board of Supervisors, a
    body politic and corporate; Fulton Brock,
20  Supervisor, Maricopa County Board of           DEMAND FOR JURY TRIAL
    Supervisors; Andrew Kunasek, Supervisor,
21  Maricopa County Board of Supervisors;
22  Donald T. Stapley, Jr., Supervisor,
    Maricopa County Board of Supervisors;
23  Mary Rose Wilcox, Supervisor, Maricopa
    County Board of Supervisors; Max Wilson,
24  Supervisor, Maricopa County Board of
25  Supervisors; David Smith, County
    Manager; Sandi Wilson, Deputy County
26  Manager; Wade Swanson, Office of
    General Litigation; Barbara R. Mundell,
27  Judge of the Superior Court of Arizona,
28  Anna Baca, Judge of the Superior Court of
    Arizona, Gary Donahoe, Judge of the

                                1

Superior Court of Arizona, Kenneth Fields,
Judge of the Superior Court of Arizona, in
their official capacities; Thomas Irvine,
attorney; Edward Novak, attorney; and
Polsinelli Shughart P.C.,

Defendants.

COME NOW THE PLAINTIFFS, through counsel undersigned, and for their FIRST

AMENDED COMPLAINT, allege as follows:

## COUNT ONE

## INTRODUCTION

1.      This action arises from a concerted scheme to hinder the criminal investigation and

prosecution of elected officials and employees of Maricopa County, Arizona and their attorneys

in the course of committing the predicate offenses described herein related to the funding and

construction of the Maricopa County Superior Court Tower.  The scheme involved numerous

acts enumerated below, including but not limited to:  coordinated efforts by all defendants to

protect defendant Donald Stapley Jr. from criminal investigation and prosecution, improperly

end other proper criminal investigations, and intimidate and retaliate against county prosecutors

and law-enforcement personnel; use of public money for the corrupt purpose of locating

surveillance devices authorized by law enforcement in order to avoid detection of crimes; threats

against Maricopa County's chief prosecutor and his wife if he challenged the unlawful actions of

certain defendants in court; repeated attempts to block investigations and prosecutions of certain

defendants, threaten and extort county officials and employees, and intimidate any prosecutor

who might be involved in these efforts by, *inter alia*, corruptly seeking to deny prosecutors their

license to practice law in Arizona; other acts of bribery, extortion and hindering and obstruction of prosecution, some of which are ongoing.

2.     As a result of the scheme, criminal investigations and prosecutions have been impeded.

3.     Large and undisclosed amounts of taxpayer funds have been spent on defendant attorneys and possibly other defendants or their associates in violation of law.

4.     Defendants' actions have deprived plaintiff Arpaio, a consumer of civil legal services from the Maricopa County Attorney's Office (MCAO), of these services, to which he is entitled by state law.

5.     Defendants' actions have deprived plaintiff Thomas and MCAO of authority and funds required to provide civil legal services to plaintiff Arpaio and other county agencies.  As a result of defendants' concerted actions, funding to the MCAO Civil Division was cut by approximately $6 million in violation of law, thereby preventing MCAO from fulfilling its statutory duties to the Sheriff's Office and other county clients.  This money has been transferred to legal offices created through the concerted and illicit efforts of defendants, staffed by attorneys who report to defendants and serve as taxpayer-funded public advocates of criminal suspects and targets of ongoing criminal investigations.

6.     Defendants have conspired to deprive plaintiff Thomas and MCAO prosecutors of a cognizable property interest, namely their license to practice law in Arizona, in retaliation for investigation and prosecution of defendants' actions, to deter other prosecutors from attempting to enforce the criminal laws against defendants, and for other illicit purposes.

//

3

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367, and 18 U.S.C. §§1961-1964.  Venue is proper in this Court pursuant to 18 U.S.C. §1965(a) and 28 U.S.C. § 1391.

## PARTIES

8.     Joseph M. Arpaio ("Arpaio"), in his official capacity as Maricopa County Sheriff, is a plaintiff in this action and a resident of Maricopa County, Arizona.

9.     Andrew P. Thomas ("Thomas"), in his official capacity as Maricopa County Attorney, is a plaintiff in this action and a resident of Maricopa County, Arizona.

10.    Defendant Maricopa County Board of Supervisors ("Board") is composed of five elected officials that are formed under Arizona Revised Statutes §11-201 *et seq.*

11.    Defendant Fulton Brock ("Brock") is an elected member of the Board and a resident of Maricopa County, Arizona.

12.    Defendant Andrew Kunasek ("Kunasek") is an elected member of the Board and a resident of Maricopa County, Arizona.

13.    Defendant Donald T. Stapley, Jr. ("Stapley") is an elected member of the Board and a resident of Maricopa County, Arizona.

14.    Defendant Mary Rose Wilcox ("Wilcox") is an elected member of the Board and a resident of Maricopa County, Arizona.

15.    Defendant Max Wilson is an elected member of the Board and a resident of Maricopa County, Arizona.

16.    Defendant David Smith ("Smith") is the Maricopa County Manager, hired by and serving at the pleasure of the Board, and a resident of Maricopa County, Arizona.

4

17.     Defendant Sandi Wilson is the Deputy Maricopa County Manager, hired by and serving at the pleasure of the Board and/or the County Manager, and a resident of Maricopa County, Arizona.

18.     Defendant Wade Swanson ("Swanson") is an attorney, hired by and serving at the pleasure of the Board and/or the County Manager, who works for a law office created by the Board, and who is a resident of Maricopa County, Arizona.

19.     Defendant Barbara R. Mundell ("Mundell") is the Maricopa County Superior Court Presiding Judge and a resident of Maricopa County, Arizona.

20.     Defendant Anna Baca ("Baca") is a retired Maricopa County Superior Court Judge who was, at all times referred to in this action, the Maricopa County Superior Court Criminal Presiding Judge and a resident of Maricopa County, Arizona.

21.     Defendant Gary Donahoe ("Donahoe") is currently the Maricopa County Superior Court Criminal Presiding Judge and a resident of Maricopa County, Arizona.

22.     Defendant Kenneth Fields ("Fields") is a retired Maricopa County Superior Court Judge and a resident of Maricopa County, Arizona.

23.     Defendant Thomas Irvine ("Irvine") is an attorney with the law firm of Polsinelli Shughart, P.C. and a resident of Maricopa County, Arizona.

24.     Defendant Edward Novak ("Novak") is an attorney with the law firm of Polsinelli Shughart, P.C. and a resident of Maricopa County, Arizona.

25.     Defendant Polsinelli Shughart, P.C. ("Polsinelli") is a corporation and law firm doing business in Maricopa County, Arizona.

//

5

## GENERAL ALLEGATIONS

26.     In approximately November 2006, the Maricopa County Superior Court hired defendant Irvine and the law firm of Shughart, Thomson & Kilroy, which later merged into defendant Polsinelli, as counsel and "space planner" for the new Maricopa County Superior Court Tower ("Court Tower").  The Court used a City of Phoenix contract for this hiring rather than going through the normal procurement process.  At some point, defendant Board also hired defendants Irvine and Polsinelli as attorneys to represent the defendant Board on the same Court Tower project.

27.     The Board approves the annual budget and supplemental budgets and appropriations for the Maricopa County Superior Court.

28.     In a series of votes from 2007 to 2009, the Board approved the expenditure of approximately $341 million in public monies to fund and construct the new Court Tower.  The Court Tower is the most expensive public-works project in the history of Maricopa County government.

29.     Upon completion, this new Court Tower will house Maricopa County Superior Court Judges and supporting courtrooms and facilities.  The Court Tower will contain such amenities as marble, travertine and wood flooring, and individual "robing rooms" for Superior Court Judges.

30.     Defendant Mundell and other Superior Court Judges and Superior Court personnel have worked closely with defendants Stapley, Board, Smith and Sandi Wilson in planning, coordinating and facilitating funding for the Court Tower.

31.     In approximately October 2007, defendants Mundell, Fields and other current and retired Maricopa County Superior Court Judges conspired and acted outside the scope of their judicial

offices to instigate frivolous investigations of plaintiff Thomas and other MCAO prosecutors and deputies by the State Bar of Arizona. This effort began in the wake of differences between plaintiff Thomas and defendant Mundell and her subordinates regarding enforcement of state laws governing illegal immigration and related issues and public debate regarding same. A total of 13 such investigations were initiated after emissaries of this group of judges ("the Mundell-Fields faction") approached leaders and officials of the State Bar and urged them to "do something" about Thomas. Eventually, the State Bar dismissed all of these investigations.

32.     The Mundell-Fields faction met, communicated and/or conspired outside the scope of their judicial offices for these illicit purposes and have continued with these actions, and with these illicit purposes, to the present.

33.     At all times in the allegations listed in subsequent paragraphs in this Complaint, and upon information and belief, defendants Mundell, Baca, Donahoe and Fields worked in concert with themselves, the other defendants and other parties, some of whom are currently unknown to plaintiffs, to facilitate the payment of public monies by the Board to the Superior Court to fund the Court Tower, as well as to defendants Irvine, Novak and Polsinelli, in exchange for hindering and providing prosecution from criminal investigation and prosecution for defendants Stapley, Board, Board members, Smith, Sandi Wilson and Swanson, as well as other illicit services.

34.     At all times in the allegations listed in subsequent paragraphs in this Complaint, and upon information and belief, defendants worked in concert to threaten and extort plaintiffs Arpaio and Thomas and employees of the Maricopa County Attorney's Office (MCAO) and the Maricopa County Sheriff's Office (MCSO) to hinder and obstruct criminal investigations and prosecutions of themselves.

35.     On December 2, 2008, MCSO deputies served defendant Stapley with a 118-count indictment returned by the Maricopa County Grand Jury.

36.     Within a few days of service of the indictment, the Board and other defendants hired a contractor at public expense to "sweep for bugs" in order to determine if any law enforcement agency had placed listening devices in county offices.  While the Board and its employees later justified this action publicly as necessary to comfort county employees, interviews of county employees by sheriff's deputies showed otherwise and specifically that these actions were taken solely to protect defendant Board, as well as defendants Brock, Kunasek, Stapley, Wilcox, and Max Wilson (hereinafter "Board members") and their staff, from potential criminal investigation and prosecution.

37.     Initially, the Stapley criminal case was randomly assigned to a Maricopa County Superior Court Judge pursuant to the standard policies of the Maricopa County Superior Court.  These practices require a "blind draw" to ensure the impartial administration of justice.  However, on December 8, 2008, defendant Mundell violated those policies by interceding and reassigning the Stapley case to defendant Fields.

38.     Defendant Fields repeatedly had demonstrated bias against plaintiff Thomas and MCAO. This bias was well known to defendants Mundell and Baca, whom Mundell appointed to her position as Presiding Criminal Judge and who served in said position at Mundell's pleasure.

39.     The evidence of defendant Fields' bias was extensive.  A Superior Court employee, Robin Hoskins, had reported defendant Fields' bias to defendant Baca.  Defendant Fields had actively campaigned for plaintiff Thomas's opponent in the 2008 election; publicly criticized plaintiff Thomas to the media; filed a frivolous complaint with the State Bar against Thomas, which was dismissed; denounced plaintiff Thomas to the media the day before Election Day

2008; and had taken other public actions to demonstrate bias, in addition to taking other private actions evidencing bias known to defendants Mundell and Baca but currently unknown to plaintiffs.

40.    Four esteemed experts in legal ethics retained by the State stated that Fields was ethically required to recuse himself from the Stapley case.  The State disclosed these expert opinions to defendants Mundell, Baca and Fields.

41.    Despite knowledge of defendant Fields' bias, defendants Mundell, Baca and Fields conspired to retain Fields as the judge in the Stapley case, in violation of Arizona law, rules of court and the standard practices of the Maricopa County Superior Court.

42.    Defendants Mundell and Baca refused to grant MCAO a hearing on the State's motion to remove Fields for bias.  This action violated Arizona's rules of court, which require a prompt hearing upon the filing of such a motion.

43.    In written rulings and statements, defendants Mundell and Fields improperly implied that MCAO attorneys had committed ethical violations simply by asking questions about, and then challenging, the selection and retention of defendant Fields for the Stapley case.  In these actions, defendants Mundell and Fields revealed the forthcoming *modus operandi* of the Mundell-Fields faction, namely, to level false ethical allegations against MCAO attorneys, including but not limited to plaintiff Thomas, in order to intimidate prosecutors, illicitly protect defendant Stapley and the Board, and corruptly deprive plaintiff Thomas and other MCAO prosecutors of their license to practice law.

44.    In a series of actions commencing in December 2008, actions made in retaliation for the Stapley indictment and to illegally enrich defendants Irvine and Polsinelli, defendants Board, Board members, Smith, Sandi Wilson, Irvine and Polsinelli unlawfully usurped plaintiff

9

Thomas' authority to serve as legal counsel to the Board and to defend Maricopa County in civil actions, including county clients such as plaintiff Arpaio and MCSO.

45.     On December 31, 2008, Arpaio and Thomas filed a lawsuit challenging the Board's illegal attempt to oust Thomas from his civil legal duties as Maricopa County Attorney.

46.     Defendants Irvine and Polsinelli acted as counsel for the Board in this civil action. They did not disclose to MCAO or the public that they were serving at the same time as attorneys for the Superior Court in the Court Tower matter.

47.     As she had done in the Stapley case, defendant Mundell personally selected the judge to hear this civil suit. Mundell chose another politically active retired judge, Donald Daughton, whose biases were known to her and other Superior Court Judges and employees, in an attempt to ensure an outcome favorable to the Board and the lawyers shared with the Board and detrimental to plaintiff Thomas and MCAO.

48.     On January 10, 2009, defendants Irvine and Polsinelli filed a pleading in Superior Court falsely claiming numerous conflicts of interest on the part of plaintiff Thomas and MCAO. Defendants Irvine, Novak and Polsinelli refused to disclose to the public their own numerous and genuine conflicts of interest as they were receiving payments of public funds, from defendant Board and the Maricopa County Superior Court, at a rate at or above $340 per hour.

49.     Known conflicts of interest by defendants Irvine, Novak and Polsinelli include serving simultaneously as counsel to both the Maricopa County Superior Court and the Board, as well as the general contractor, on the Court Tower project and transactions; advising defendant Board on alleged conflicts of interest by plaintiff Thomas and MCAO and then accepting legal work and compensation from the Board based on Irvine's alleged finding that conflicts existed; representing private parties in actions against defendant Board without a proper waiver of said

conflict; representation of Conley Wolfswinkel, a business associate of defendant Stapley, Wolfswinkel business interests, and defendant Stapley himself and/or Stapley business interests; representing defendant Board in quashing grand-jury subpoenas decided before defendant Donahoe in criminal investigations in which defendants Irvine, Novak and Polsinelli knew they were targets of same; and filing a lawsuit and request for orders before defendant Donahoe to unlawfully shield themselves and county officials and employees from any criminal investigation or prosecution by Maricopa County prosecutors, thereby seeking to unlawfully prevent plaintiff Arpaio from submitting criminal investigations and cases to Maricopa County's duly elected prosecutor.

50.     On February 6, 2009, in response to a motion filed by the Board and defendants Novak, Irvine and Polsinelli, defendant Donahoe quashed a grand-jury subpoena into expenditures for the Court Tower project.  Defendant Donahoe ignored state law and disqualified MCAO from the investigation in order to hinder and effectively terminate it.  At the time of his ruling, defendant Donahoe had succeeded defendant Baca as Presiding Criminal Judge, and he serves in this position at the pleasure of defendant Mundell.

51.     Defendant Donahoe's order did not disclose the attorney-client relationship that existed between the Superior Court, the Board and defendants Irvine, Novak and Polsinelli on the very same Court Tower project.

52.     The Donahoe order falsely accused plaintiff Thomas of a conflict of interest.  This claim was made in an attempt to intimidate county prosecutors and improperly end the investigation. The ruling ignored Arizona statutes and rules of ethics governing both attorneys and judges. Peter Jarvis, one of the nation's leading experts in legal ethics, filed an affidavit avowing there was no conflict of interest on the part of plaintiff Thomas or MCAO.

11

53.     News of the Donahoe order was leaked to a criminal defense attorney representing defendant Stapley hours before it was released to the public or the State.  MCAO possesses written evidence of this improper communication.  This sharing of confidential information among the parties demonstrated the concerted nature of defendants' actions to impede investigation and prosecution of said matters.

54.     On February 25, 2009, attorneys for Wolfswinkel, a convicted felon and business partner of defendant Stapley, filed a Motion to Controvert a Search Warrant in Superior Court challenging a search warrant served by MCSO on Wolfswinkel's businesses.  The pleading in Superior Court was facially and procedurally improper, as the search warrant was issued by a Maricopa County Justice Court and not the Superior Court, and the motion accordingly should have been filed in Justice Court.  Nevertheless, defendant Donahoe, who somehow learned of the filing almost immediately, improperly assigned the matter to himself the day after filing and set a hearing.

55.     Defendant Irvine has worked as the attorney for Wolfswinkel and/or his businesses or businesses of Wolfswinkel's relatives.  Despite requests from MCAO for disclosure, Irvine has refused to disclose to MCAO and the public the nature, extent and current status of his representation of and relationships with Wolfswinkel, said corporate entities, and defendant Stapley.

56.     On February 26, 2009, defendant Swanson filed a pleading that urged a Superior Court Judge to impose personal sanctions on the MCAO prosecutor handling the Stapley case.  Defendant Swanson filed this pleading at the behest of defendant Board, Board members, and defendants Smith and Sandi Wilson.  This pleading was filed after MCAO and MCSO had attempted to obtain a transcript of a deposition of Wolfswinkel taken in a civil case.

12

57.     During oral argument in court, defendants Irvine and Novak stood in the courtroom alongside Stapley defense counsel and laughed at the prosecutor as she was verbally assailed. The Arizona Court of Appeals later held that the MCAO prosecutor did nothing wrong and overturned sanctions against MCAO.  The Swanson filing was meant to intimidate, and it corruptly inured to the benefit of Stapley and Wolfswinkel in a matter in which the Board was not a party.

58.     On approximately March 4, 2009, an anonymous State Bar complaint was filed against plaintiff Thomas for his prosecution of defendant Stapley.  Upon information and belief, the complainant was defendant Novak, who was then employed as counsel for the Board and held the position of President of the State Bar.  The State Bar of Arizona regulates the practice of law in Arizona and may suspend or revoke attorney licenses.

59.     The Arizona Supreme Court ruled in 2008 in <u>Thomas v. State Bar of Arizona</u> that State Bar investigations then involving plaintiff Thomas were to be handled by an investigator acting independently of the State Bar.  However, the investigator hired for the Stapley investigation, retired judge Rebecca Albrecht, did not act independently.  Instead, she circulated a draft dismissal letter soliciting comment among Bar counsel and officers, including upon information and belief defendant Novak, thereby coordinating her efforts with Novak in violation of the Supreme Court guidelines.  Albrecht's dismissal letter contained admonitory language that ignored state law and was contradicted by a later ruling by defendant Fields, but which served to intimidate further investigation or prosecution of the defendants.  Novak obtained this outcome corruptly and for the benefit of defendant Stapley and other Board members in exchange for compensation by defendant Board.

60.     On March 6, 2009, defendant Smith falsely accused plaintiff Thomas of a conflict of interest for his attempt to enforce Arizona's public-records laws and denied him public monies to hire an attorney to challenge the Board's violation of these laws. Defendants Smith and Swanson have repeatedly refused to authorize payments to outside law firms retained by MCSO or MCAO to challenge unlawful actions by defendant Board, a pattern and practice that continues to the present.

61.     On March 6, 2009, defendant Smith threatened to seek recovery of legal fees from plaintiff Thomas and his wife if Thomas sued defendant Board when it acted unlawfully. The threat included seeking "reimbursement for internal staff time." This threat was made despite defendant Board's open and ongoing actions in violation of law and Thomas' legal duty, as Maricopa County Attorney, to sue to correct such violations.

62.     On August 25, 2009, defendant Fields dismissed all misdemeanor counts from the indictment of defendant Stapley. As a result of this improper ruling, which offered reasoning never before embraced by an Arizona court, prosecutors were forced to dismiss the rest of the Stapley case.

63.     On August 26, 2009, Judge Daughton upheld defendant Board's illegal takeover of MCAO's civil functions. His brief minute entry, which cited no basis in law for his conclusions, has wrought havoc in Maricopa County government and deprived plaintiff Arpaio of the civil legal services from MCAO to which he is entitled by state law. This ruling improperly inured to the benefit of defendants Board and Polsinelli, which appeared in this legal action on behalf of defendant Board despite their simultaneous service as attorneys for the Superior Court.

64.     In his minute entry, Judge Daughton found plaintiff Thomas had violated the rules of professional responsibility governing attorneys. In neither his minute entry nor final judgment

did Judge Daughton specify how plaintiff Thomas had violated these rules.  In oral argument

prior to issuing his final judgment, Judge Daughton was unable to state what plaintiff Thomas

had done to violate the ethical rules, despite being asked directly and repeatedly by plaintiff

Thomas' counsel in open court.  Judge Daughton's finding of a violation of the rules of

professional responsibility against plaintiff Thomas, which he could not explain or defend, was

made for the purpose of illicitly aiding defendants Board, Irvine and Polsinelli and in furtherance

of the efforts of the Mundell-Fields faction to encourage the State Bar to take adverse and unjust

action against plaintiff Thomas and potentially other MCAO attorneys.

65.    Throughout 2008 and 2009, despite numerous requests for public records under

applicable statutes on various topics by both plaintiffs, Maricopa County failed to provide

records of public expenditures and other matters to MCAO and MCSO.  Instead, defendant

Board adopted policies to prevent the plaintiffs from obtaining public records.  Judge Daughton

upheld these denials in violation of Arizona's public-records statutes with a ruling that ignored

Arizona law and that was intended to aid defendants Board, Irvine and Polsinelli.

66.    On August 30, 2009, Maricopa County employees who served as project managers for

the Court Tower project publicly questioned the need for, and propriety of, hiring defendants

Irvine and Polsinelli.  In interviews with the media, one project manager noted defendant Irvine

and attorneys in his firm seemed to have been hired simply to "take minutes" in meetings.

Another manager said he saw "no need" to hire them.

These county employees work for defendants Board, Smith and Sandi Wilson.

67.    Despite the classic signs of graft that have come to light regarding the Court Tower

project, defendant Board has paid defendant Polsinelli at least $1.2 million in legal fees over the

last fiscal year.  This figure excludes what the Superior Court has paid them separately for the Court Tower project.

68.      On October 19, 2009, defendants Smith and Swanson prepared and/or released a written memorandum for defendants Smith, Board and Board members, seeking to justify the Board's refusal to approve special prosecutors selected by plaintiff Thomas.  This memorandum used groundless legal reasoning never previously used by the Board to reject a special-prosecutor appointment, and did so in order to block the proper appointment of special prosecutors to handle potential criminal investigations and prosecutions involving the Board, Board members, and other county officials and employees.

69.      On or about October 20, 2009, defendants Smith and/or Swanson made false statements to the media regarding MCAO's attempt to appoint special prosecutors.  They claimed any possible prosecution of defendant Stapley was a "witch hunt," that plaintiff Thomas was "playing politics," and that said special prosecutors would be paid $900 an hour.  These false statements were non-legal in nature and made for the purpose of intimidating prosecutors and corruptly advocating for defendant Stapley at taxpayer expense.

70.      On October 26, 2009, defendant Smith sent a letter to members of plaintiff Thomas' office demanding disclosures of information relating to "blogging" on the Internet or other discussions had by MCAO employees with anyone relating to people in Maricopa County, whether on personal or business time.  Said demands constituted extortion of plaintiff Thomas and MCAO in that defendant Smith impliedly threatened to file a complaint with the State Bar if plaintiff Thomas and MCAO did not consent to his request.  Fulfillment of defendant Smith's request would have required violating the civil rights of MCAO prosecutors and employees under federal and state law.

71.     On or about November 2, 2009, defendant Wilcox told the media that defendant Board was not going to approved the requested special prosecutors.

72.     On November 6, 2009, defendant Novak sent an email to an attorney for plaintiff Arpaio extorting a non-party to their action, plaintiff Thomas and MCAO, by threatening to release a videotape of a minor vehicular accident involving an MCAO prosecutor in a Maricopa County parking garage if plaintiff Arpaio did not withdraw his demand for videotape of the arrest of defendant Stapley in the same garage.  Such demand corruptly inured to the benefit of defendant Stapley.

73.     On November 13, 2009, defendants Board, Irvine and Polsinelli filed a motion on behalf of the Board and at taxpayer expense seeking an order from defendant Donahoe blocking plaintiff Thomas and MCAO from investigating or prosecuting any member of defendant Board or any county employee for any crime.  Said actions corruptly inured to the benefit of defendants.

74.     The above-described actions by defendants have served to unjustly enrich defendants Irvine, Novak and Polsinelli in violation of law.

75.     The above-described actions by defendants have allowed the Board to cut $6 million in funds from MCAO's civil budget and oust MCAO from its rightful role in defending county litigation.  Said actions have deprived plaintiff Arpaio and other Maricopa County officers of the counsel and law offices which, by law, are to represent him when he or MCSO is sued.

76.     On November 17, 2009, defendant Smith, on behalf of defendants Board, Board members, Sandi Wilson and Swanson, filed a written complaint with the State Bar against plaintiff Thomas and other MCAO prosecutors.  The complaint cited the rulings improperly obtained from defendant Donahoe and Daughton, along with the attempts to coerce disclosure of

private blogging information from plaintiff Thomas and MCAO, as purported grounds for professional discipline.  In filing this complaint, defendant Smith perfected the coordinated efforts of defendants to corruptly deprive plaintiff Thomas and MCAO prosecutors of their license to practice law in Arizona.

## CLAIM FOR RELIEF

**(Liability for all defendants for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §1962 *et seq.*)**

77.    Plaintiffs reassert and incorporate by reference paragraphs 1-76 above and further allege:

78.    Defendants all constitute persons under 18 U.S.C. §1961. The defendants are involved in an enterprise as they are all related by contract association, as a legal entity or as a group of individuals associated in fact.  These enterprises engage in or participate in activities which affect interstate commerce including but not limited to hiring the out-of-state National Center for State Courts as consultants and national firms as contractors on the Court Tower project; participation in the National Association of Counties, of which defendant Stapley was past president; federal funding received by Maricopa County and used for some or all of the county operations discussed in this Complaint; and participation in interstate programs such as interstate compact supervision by the Board, its members and defendant judges.

79.    Plaintiffs have suffered injury as set forth in paragraphs 1-76 as required under 18 U.S.C. §1964(c) based on the defendants prohibited activities in 18 U.S.C. §1962.

80.    Defendants have engaged in conduct constituting a pattern of racketeering activity as stated in the above referenced paragraphs and defined in 18 U.S.C. §1961(1)(A)..  The prohibited conduct is in violation of 18 U.S.C. §1962 (b), (c), and (d). This conduct includes bribery and extortion as chargeable under state law, Arizona Revised Statutes §§13-1804 and 13-2601 *et*

*seq.,* punishable by more than one year imprisonment, in that the conduct described above has facilitated the taking of funds, property and/or cognizable property interests from Maricopa County and State of Arizona taxpayers, MCAO, MCSO, the plaintiffs, and employees of the plaintiffs.

81.     The conduct of the defendants as outlined in the above paragraphs constitutes at least two acts of racketeering activity and includes threats to hinder prosecution of those involved in illegally giving or receiving county, state or federal funds; exposing other security and privacy concerns; and causing plaintiffs to part with funds, property or cognizable property interests and legal services to which they were entitled by law.  In addition, the conduct complained of includes seeking to obtain any benefit from another person upon a claim or representation that they can or will improperly influence the action of a public servant, or a person who offers, confers or agrees to confer any benefit upon a public servant with the intent to influence the public servant's vote, opinion, judgment, exercise of discretion or other action in his or her official capacity as a public servant or solicits, accepts or agrees to accept any benefit upon an agreement or understanding that his or her vote, opinion, judgment, exercise of discretion or other action as a public servant or party officer may thereby be influenced.

82.     The plaintiffs further assert that a conspiracy exists between the defendants to commit bribery and/or extortion by hindering the prosecution of county officers, employees or associates for the racketeering activities alleged.

//

//

## PRAYER FOR RELIEF

Wherefore, plaintiffs pray for the following relief:

1.    Judgment in its favor against all of the defendants in an amount triple the damages each has caused plaintiffs through their racketeering activity, pursuant to 18 U.S.C. §1964(c), and specifically sufficient damages to make whole plaintiff Arpaio, a consumer of legal services corruptly denied those services from MCAO due to the coordinated efforts of defendants;

2.    Costs and attorneys' fees incurred in pursuing this action pursuant to Federal Rules of Civil Procedure, Rule 54; and/or 18 U.S.C. §1964;

3.    Such relief as is necessary to allow plaintiffs Arpaio and Thomas to enforce the criminal and civil laws of the State of Arizona without improper or corrupt hindrance by defendants;

4.    Such relief as is necessary to protect plaintiffs and employees of MCAO and MCSO from defendants' actions and practices complained of herein; and

5.    Any such other relief as this Court may deem just and proper.

## COUNT TWO
### [Violation of 18 U.S.C. § 1962(c)]

83.    PLAINTIFFS re-allege and incorporate herein all allegations contained in all previously plead counts.

**The Enterprise**

84.    The BOARD is a governmental entity constituting an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

//

//

//

**The Relationship between the Defendants and the Enterprise**

85.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants BROCK, KUNASEK, STAPLEY, WILCOX, and WILSON, participated, directly or indirectly, in the operation and management of the BOARD as elected members of the BOARD.

86.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants SMITH and SANDI WILSON participated, directly or indirectly, in the operation and management of the BOARD as employees of the BOARD and whose primary duties included management of the BOARD.

87.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants SWANSON, IRVINE, NOVAK, and POLSINELLI participated, directly or indirectly, in the operation and management of the BOARD as attorneys retained by the BOARD, and rendered advice, counsel, and professional services concerning the acts complained of in this FIRST AMENDED COMPLAINT.

**The Acts and Pattern of Racketeering Activity**

88.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants participated, directly or indirectly, in the operation and management of the BOARD with the specific intention of using the BOARD in obstructing, delaying, or preventing, the communication of information or testimony to investigators from the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office regarding an investigation of public expenditures of millions of dollars for the COURT TOWER project, all in violation of 18 U.S.C. § 1962(c).

89.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants participated, directly or indirectly, in the operation and management of the BOARD

and used the BOARD to insulate Defendants from any and all pending or potential investigations into the COURT TOWER project.

90.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants, as part of an artifice and scheme to defraud, used the BOARD to insulate Defendants from all pending or potential investigations into the COURT TOWER project in the following three-part fraudulent scheme:

First, Defendants used the BOARD to accomplish the termination of any investigation by PLAINTIFFS into the COURT TOWER project as more fully explained below;

Second, Defendants used the BOARD'S funding power to restructure the Civil Division of the Maricopa County Attorney's Office so that the attorneys answerable to the Maricopa County Attorney were now answerable to the BOARD as more fully explained below; and,

Third, Defendants used the BOARD'S exclusive statutory authority to deputize special prosecutors by refusing to appoint any special prosecutor as more fully explained below.

91.     At all times material to the events alleged in the FIRST AMENDED COMPLAINT, and with the specific intent of furthering this three-part scheme to obstruct, delay, or prevent, the communication of information or testimony to investigators from the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office regarding an investigation of the COURT TOWER project, Defendants engaged in a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1962(c), that consisted of the repeated use of the instrumentalities of the mail and interstate commerce, all in violation of 18 U.S.C. § 1341, and as more fully explained below.

//

**The Investigation that Triggered the Scheme and Artifice to Defraud**

92.     In approximately November of 2008, an investigation was initiated by THOMAS into the public expenditures of millions of dollars by the BOARD for the COURT TOWER project.

93.     On or about December 15, 2008, Defendants first became aware of this investigation as a result of a public records request by the Maricopa County Attorney's Office made to the BOARD.

**First Step: "Peel" (Remove County Attorney and Sheriff)**

94.     Beginning on approximately December 15, 2008, and continuing to the present, Defendants used the BOARD to accomplish the termination of any investigation by PLAINTIFFS into the COURT TOWER project.

95.     On or about December 15, 2008, in furtherance of a scheme and artifice to defraud, and with the specific intention of using the BOARD in obstructing, delaying, or preventing, the communication of information or testimony to investigators concerning an investigation of the COURT TOWER project, Defendants arranged for the BOARD to: [1] immediately declare a conflict of interest as existing between the BOARD and THOMAS; and [2] immediately communicate that determination by the BOARD to THOMAS.

96.     Defendants' use of the BOARD'S declaration of a conflict of interest and the communication of that declaration by the BOARD to THOMAS had the intended effect of immediately terminating PLAINTIFFS' ability to continue the investigation of the COURT TOWER project.

97.     On or about December 15, 2008, in furtherance of a scheme and artifice to defraud, and with the specific intention of using the BOARD in obstructing, delaying, or preventing, the communication of information or testimony to investigators concerning an investigation of the

23

COURT TOWER project, Defendants arranged for the BOARD to: [1] immediately terminate the statutorily imposed lawyer-client relationship that existed between the BOARD and THOMAS; [2] immediately retain the legal services of separate counsel; and [3] immediately communicate to THOMAS the fact that the BOARD was now represented by separate counsel.

98.     Defendants' use of the BOARD'S retention of separate counsel and the communication of that retention by the BOARD to THOMAS had the intended effect of immediately terminating any role THOMAS might have in the investigation of the COURT TOWER project.

99.     Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep PLAINTIFFS from continuing with the now-stalled investigation of the COURT TOWER project by attempting to initiate a number of proceedings by the State Bar of Arizona against THOMAS.

100.    Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep PLAINTIFFS from continuing with the now-stalled investigation of the COURT TOWER project by initiating and litigating a number of legal proceedings in the Superior Court of Maricopa County.

101.    At all times material to the events alleged in this Complaint, and with the specific intent of furthering this part of a three-part scheme to obstruct, delay, or prevent, the communication of information or testimony to investigators from the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office regarding an investigation of the COURT TOWER project, Defendants prepared, directed the preparation of, and received, a variety of memoranda, pleadings, and letters that were disseminated as a result of the repeated use of the

24

instrumentalities of the United States mail and interstate commerce, all in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c).

102.    Defendants' use of the BOARD to accomplish the removal, or "peeling off" of PLAINTIFFS had the intended effect of immediately terminating any pending or potential investigation into the COURT TOWER project by investigators from the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office.

**Second Step: "Steal" (Removal of County Attorney's Civil Division)**

103.    At all times prior to the disclosure by THOMAS of the investigation into the COURT TOWER project, the Maricopa County Attorney's Office, in order to carry out its statutorily mandated duties, including that statutory duty of serving as legal advisor to the BOARD, contained a Civil Division, consisting of attorneys that were hired by, employed by, and under the direction of THOMAS, the elected County Attorney.

104.    Beginning on approximately December 23, 2008, and continuing to the present, in furtherance of a scheme and artifice to defraud, and with the specific intention of using the BOARD in obstructing, delaying, or preventing, the communication of information or testimony to investigators concerning an investigation of the COURT TOWER project, Defendants arranged for the BOARD to use its statutorily granted funding authority to, on or about July 1, 2009: [1] cut approximately $6,000,000 from the budget of the Maricopa County Attorney that was used to pay wages and benefits for the attorneys employed by the Maricopa County Attorney's Civil Division; [2] establish a general litigation office now under the direction and control of the BOARD; [3] establish a special litigation office now under the direction and control of the BOARD; and [4] retain outside attorneys to provide legal advice to the BOARD instead of and in place of THOMAS, the elected County Attorney.

105.   Defendant's use of the BOARD to accomplish the removal, or "stealing away," of the County Attorney's Civil Division had the intended effect that Defendants were able to control legal advice that they requested or received regarding the COURT TOWER project.

106.   Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep PLAINTIFFS from continuing with the now-stalled investigation of the COURT TOWER project by attempting to initiate a number of proceedings by the State Bar of Arizona against THOMAS.

107.   Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep PLAINTIFFS from continuing with the now-stalled investigation of the COURT TOWER project by initiating and litigating a number of legal proceedings in the Superior Court of Maricopa County.

108.   At all times material to the events alleged in this Complaint, and with the specific intent of furthering this part of a three-part scheme to obstruct, delay, or prevent, the communication of information or testimony to investigators from the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office regarding an investigation of the COURT TOWER project, Defendants prepared, directed the preparation of, and received, a variety of memoranda, pleadings, and letters that were disseminated as a result of the repeated use of the instrumentalities of the United States mail and interstate commerce, all in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c).

109.    Defendants' use of the BOARD to accomplish the removal, or "stealing away," of the County Attorney's Civil Division had the intended effect that Defendants were able to control legal advice that they received regarding the COURT TOWER project.

**Third Step: "Seal" (Refuse to Appoint Special Deputy County Attorney)**

110.    Pursuant to the provisions of A.R.S. § 11-403(B)(1), only the BOARD is statutorily authorized to appoint a special deputy county attorney as may be required due to the inability of the County Attorney to serve as the statutorily designated "legal advisor to the board of supervisors" pursuant to A.R.S. § 11-532(9).

111.    Beginning on or about  October 5, 2009, and continuing to the present, in furtherance of a scheme and artifice to defraud, and with the specific intention of using the BOARD in obstructing, delaying, or preventing, the communication of information or testimony to investigators concerning an investigation of the COURT TOWER project, Defendants used the BOARD'S statutorily granted funding authority to continue the now-stalled investigations by: [1] refusing to approve requests by THOMAS for the appointment of those special deputy county attorneys that had been specifically selected by THOMAS and identified by THOMAS to the BOARD; [2] removing consideration of a request by THOMAS for the appointment by the BOARD of those designated special deputy county attorneys from the BOARD'S meeting agenda on or about October 21, 2009; and, [3] refusing, on or about October 30, 2009, to place on the BOARD'S meeting agenda consideration of a request by THOMAS for the appointment by the BOARD of those designated special deputy county attorneys.

112.    Defendants' use of the BOARD to block appointment of any special deputy county attorney had the intended effect of preventing any further investigation of the COURT TOWER project.

27

113.    Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep PLAINTIFFS from continuing with the now-stalled investigation of the COURT TOWER project by attempting to initiate a number of proceedings by the State Bar of Arizona against THOMAS.

114.    Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep PLAINTIFFS from continuing with the now-stalled investigation of the COURT TOWER project by initiating and litigating a number of legal proceedings in the Superior Court of Maricopa County.

115.    At all times material to the events alleged in this Complaint, and with the specific intent of furthering this part of a three-part scheme to obstruct, delay, or prevent, the communication of information or testimony to investigators from the Maricopa County Attorney's Office and the Maricopa County Sheriff's Office regarding an investigation of the COURT TOWER project, Defendants prepared, directed the preparation of, and received, a variety of memoranda, pleadings, and letters that were disseminated as a result of the repeated use of the instrumentalities of the United States mail and interstate commerce, all in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c).

116.    Defendants' use of the BOARD to accomplish the "sealing up" of any exposure to an investigation into the COURT TOWER project, by the refusal to appoint a special deputy county attorney, had the intended effect of precluding the continuation or institution of any further investigation, whatsoever, into the COURT TOWER project.

## The Resulting Injury

117.    Defendants' violation of 18 U.S.C. § 1962(c) caused THOMAS to suffer injury to his business and property consisting of a statutorily granted "protectable legal interest" in the public services provided by THOMAS to "conduct, on behalf of the State, all prosecutions for public offenses," pursuant to A.R.S. § 11-532(A)(1).

118.    Defendants' violation of 18 U.S.C. § 1962(c) caused PLAINTIFFS to suffer deprivation of the "intangible right to honest service" pursuant to, and as that term is defined by, the provisions of 18 U.S.C. § 1346.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS request judgment as follows:

1.    PLAINTIFFS are entitled to treble damages, costs of litigation, and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c), and waive any claim to such damages, costs, and fees;

2.    Granting equitable relief, pursuant to the provisions of 18 U.S.C. §§ 1964(a) and (c), ordering the BOARD to appoint those special deputy county attorneys that had been specifically selected by THOMAS and identified by THOMAS to the BOARD, pursuant to the provisions of A.R.S. § 11-403(B)(1), and for the exclusive purpose of conducting any and all investigations into the COURT TOWER project and prosecuting any resulting criminal actions against any implicated individuals, including but not limited to county employees and members of the BOARD;

3.    Granting equitable relief, pursuant to the provisions of 18 U.S.C. §§ 1964(a) and (c), ordering the BOARD to dismantle the BOARD'S special litigation section and return control of that litigation section to the Maricopa County Attorney;

4.     Granting equitable relief, pursuant to the provisions of 18 U.S.C. §§ 1964(a) and (c), ordering the BOARD to reinstate the Office of Maricopa County Attorney as the attorney for the BOARD and other applicable county departments; and,

5.     Granting such further relief as may be appropriate.

## COUNT THREE
### [Violation of 18 U.S.C. § 1962(c)]

119.   PLAINTIFFS re-allege and incorporate herein all allegations contained in all previously plead counts.

120.   At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants participated, directly or indirectly, in the operation and management of the BOARD with the specific intention of using the BOARD in hindering the apprehension, prosecution, conviction or punishment of another for any felony through the use of deception, all in violation of 18 U.S.C. § 1962(c).

121.   At all times material to the events alleged in the FIRST AMENDED COMPLAINT, Defendants, as part of an artifice and scheme to defraud, used the BOARD to insulate STAPLEY from apprehension, prosecution, conviction or punishment for any felony by using the BOARD'S exclusive statutory authority to deputize special prosecutors by refusing to appoint any special prosecutor as previously alleged.

122.   Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep THOMAS from continuing with the prosecution of STAPLEY by attempting to initiate a number of proceedings by the State Bar of Arizona against THOMAS.

123.   Beginning on or about December 15, 2008, and continuing to the present, and in furtherance of their scheme and artifice to defraud, Defendants continued their attempts to keep THOMAS from continuing with the prosecution of STAPLEY by initiating and litigating a number of legal proceedings in the Superior Court of Maricopa County.

124.   At all times material to the events alleged in this FIRST AMENDED COMPLAINT, and with the specific intent of furthering, by deception, this scheme and artifice to insulate STAPLEY from apprehension, prosecution, conviction or punishment for any felony, Defendants prepared, directed the preparation of, and received, a variety of memoranda, pleadings, and letters that were disseminated as a result of the repeated use of the instrumentalities of the United States mail and interstate commerce, all in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c).

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS request judgment as follows:

1.   PLAINTIFFS are entitled to treble damages, costs of litigation, and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c), and waive any claim to such damages, costs, and fees;

2.   Granting equitable relief, pursuant to the provisions of 18 U.S.C. §§ 1964(a) and (c), ordering the BOARD to appoint those special deputy county attorneys that had been specifically selected by THOMAS and identified by THOMAS to the BOARD, pursuant to the provisions of A.R.S. § 11-403(B)(1), and for the exclusive purpose of conducting any and all pending prosecutions relating to STAPLEY;

3.   Granting equitable relief, pursuant to the provisions of 18 U.S.C. §§ 1964(a) and (c), ordering the BOARD to dismantle the BOARD'S special litigation section and return control of that litigation section to the Maricopa County Attorney;

4.      Granting equitable relief, pursuant to the provisions of 18 U.S.C. §§ 1964(a) and (c), ordering the BOARD to reinstate the Office of Maricopa County Attorney as the attorney for the BOARD and other applicable county departments; and,

5.      Granting such further relief as may be appropriate.

**DEMAND FOR A JURY TRIAL**

Plaintiffs demand a jury trial pursuant to Federal Rules of Civil Procedure, Rule 38 (b).

DATED this 14th day of Janauary, 2010.

ANDREW P. THOMAS
MARICOPA COUNTY ATTORNEY

By:      _/s/ Rachel Alexander_
         Rachel Alexander
         Deputy County Attorney
         Attorneys for Plaintiffs